THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY

v.

THE PEOPLE ex rel. Kochersperger, County Treasurer.

*Opinion filed February 14, 1898—Rehearing denied April 7, 1898.*

SPECIAL ASSESSMENTS—*court cannot, on application for sale, reduce assessment to meet cost of improvement.* The court has no power, on application for judgment of sale for a delinquent special assessment, to reduce such assessment to an amount equal to the cost of the part of the improvement already completed and the estimated amount necessary to finish the work. (*People* v. *McWethy,* 165 Ill. 222, and *Boynton* v. *People,* 159 id. 553, distinguished.)

CARTWRIGHT and BOGGS, JJ., dissenting.

APPEAL from the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

E. PARMALEE PRENTICE, for appellant.

CHARLES S. THORNTON, Corporation Counsel, JOHN A. MAY, and STUART G. SHEPARD, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment for the sale of certain lands returned as delinquent for the non-payment of a special assessment levied to put in a water-pipe or main in Aberdeen street, between West Forty-eighth and West Fiftieth streets, in Chicago, with valves, and connections with the fire hydrants. The assessment had been confirmed at a previous term by default, and appellant filed its objections to the application for judgment for the sale of its property, alleging that the levy was greatly in excess of the cost of the improvement. The county court heard the evidence upon this issue, and found therefrom that the levy was about thirty-five per cent in excess of the cost of the improvement and the cost of levying and collecting the assessment, and reduced the assessment *pro tanto* upon appellant's property and rendered judg-

ment for the balance. Appellant appealed to this court, and appellee has assigned cross-errors challenging the ruling of the court in reducing said assessment.

It appeared from the evidence that the work had been completed, except the brick basins to be constructed around the valves and hydrants, which, it was estimated, would cost $240, and the making of the connections, which would cost $40, and that it was the custom of the city to do this work itself, after the contractor had finished his work of putting in the. pipes. The assessment as confirmed was $1821. The cost of the improvement as completed, plus the $280 for basins and connections to be put in, together with the costs and expenses of levying and collecting the assessment, appeared from the evidence to be $1175.17. Appellant owned all of the property assessed for the improvement, and no part of the assessment had been paid.

The contentions of counsel can perhaps be best stated in their own language. Appellant contends "that the county court should, upon application for judgment of sale, reduce the amount of a special assessment down to the actual cost of the work, when a contract has been let and such actual cost can be determined, and is shown to be less than the estimated cost." Appellee insists: "First, the county court has no jurisdiction, upon the application for judgment of sale, to make any reduction of the assessment as returned delinquent by the collector, nor to give judgment of sale for less than the full amount of such delinquency and legal costs; second, if the county court, at such a time, has jurisdiction to make such a reduction, then it is only upon a showing that the work has been completed, and that a sufficient amount has already been collected by the city to pay the entire cost of it, including all legal costs and expenses."

We are of the opinion that the broad proposition contended for by appellant cannot be acceded to. In fairness, however, it should be stated that none of the work

was completed nor the contract therefor let until after the judgment of confirmation, and appellant insists that the question here involved could not have been raised on the confirmation, for the reason that it was not then ascertained, otherwise than by the estimate of the commission, what the improvement would in fact cost. Section 39 of article 9 of the City and Village act provides that the report of the collector, made as provided in that section, "shall be *prima facie* evidence that all the forms and requirements of the law in relation to making said return have been complied with, and that the special assessments mentioned in said report are due and unpaid, and upon the application for judgment upon such assessment no defense or objection shall be made or heard which might have been interposed in the proceeding for the making of such assessment or the application for the confirmation thereof." Section 40 then provides that the general officer of the county authorized to apply for judgment shall proceed to obtain judgment at the same time and in the same manner as is provided for obtaining judgment for other unpaid taxes,—that is, as provided by the revenue code. Under the above quoted provision of said section 39 it is claimed that it was proper to file the objection and have the amount of the judgment reduced to the actual cost, and it is contended that this position is sustained by *People* v. *McWethy*, 165 Ill. 222, and *Boynton* v. *People*, 159 id. 553, citing with approval *City of Bloomington* v. *Blodgett*, 24 Ill. App. 650.

It has been decided by this court in many cases that the judgment of confirmation is final as to all questions which might have been litigated in the proceeding therefor, and cannot be attacked in a collateral proceeding, such as an application for judgment of sale, except for jurisdictional defects. Of course, if the confirmed assessment against any tract has been paid in whole or in part, that defense can be made on the application for an order of sale; but it does not necessarily follow that each prop-

erty owner can, in a proceeding of this character, call upon the city to enter into an accounting to determine whether a less amount than the confirmed assessment will not be sufficient to pay for the improvement and all the costs and expenses authorized by the statute. In the *Mc-Wethy case* it was decided, on an application for judgment of sale on the fourth installment, that where the work had been completed and the cost and expenses ascertained, and a sufficient amount had been collected from the first three installments to pay for the improvement and the costs and expenses, the objector having paid the installments assessed against her property, such facts could be shown on such application as a complete defense; that, the object and purpose of the assessment having been fully completed and satisfied, there could no longer be any necessity for the collection of an installment which the statute required should, when collected, be returned to those who paid it. In *City of Bloomington* v. *Blodgett*, 24 Ill. App. 650, cited with approval in the *Boynton case*, it was alleged in the bill for injunction that the work had been completed and a sufficient amount of the assessment collected to pay for it, and relief was denied on the ground that the complainant had an adequate remedy at law and could make his defense on the application for judgment of sale. So far the decision was, in effect, the same as in the *McWethy case*. True, it was said in the opinion in the *Blodgett case* and mentioned with approval in the *Boynton case*, that if it is clearly and certainly known, from letting the contract for the proposed work or otherwise, that there is an excessive levy, then there is a legal defense *pro tanto* as to such excess, which should not be collected, and that such defense may be made in the proceeding by the collector for judgment under the last clause of said section 39. See *Harris* v. *City of Chicago*, 162 Ill. 288.

It is apparent that the language referred to in the *Boynton* and *Blodgett cases* is more comprehensive than the

questions there presented for decision. Still, if the language there used were followed, it must be clearly and certainly known that the levy is an excessive one before such a defense could be sustained, and even then, unless the amount of such excess were clearly and certainly known, the court would be unable to make the judgment conform to the required amount. As a general rule, it would seem that the cost of the improvement and the costs and expenses of levying and collecting the assessment could not be clearly and certainly known until the full completion of the work and the collection of a sufficient amount of the assessment to pay for it, for if the work be let by contract, many unforeseen contingencies might arise requiring extra work at additional cost or the re-letting of the contract at an increased price, or if the city should itself perform the work, any determination as to the cost before completion would simply be another estimate of a character similar to that made by the commission in the first instance. So, too, it would seem to be a matter of doubt whether it could be clearly and certainly known what the costs and expenses of levying and collecting the assessment would be before a sufficient amount has been collected to pay for the improvement and such costs and expenses. To compel the city, upon a *prima facie* case made by the objector that the assessment was excessive to an amount approximated, to go into a general accounting with every such objector on the hearing of his objections, involving the price of labor and materials and the multitudinous conditions which might enhance or lessen the cost of the improvement, to make it appear to the court either that there was no excess or that the excess would be less than contended for, would introduce a practice not contemplated by the legislature, and lead to much vexatious and unnecessary litigation. Outside of said section 39 and section 191 of the revenue code we know of no provision of the statute having any reference to such a defense; but it has been expressly pro-

vided in sections 47 and 65 of article 9, for the re-payment by the city of any excess to those by whom it was paid.

Nor can it be said, we think, that the same reasoning would apply to defeat the defense made in the *McWethy case*, where the work had been fully completed and the previous installments collected, from which sufficient had been realized to pay in full. In such a case, the cost of the improvement, the collection of a sufficient amount to pay for it and the expenses of such collection would be clearly and definitely known, and proof thereof, without reference to the particular amount of any excess, would be sufficient to show that there was no further claim or lien upon the objector's property who had paid his proportion, and that an order for its sale would not only be a useless thing, but an unjust and vexatious proceeding. That the property owner should have a remedy to prevent the collection of excessive special assessments is certainly true, and as said in *Harris* v. *City of Chicago, supra,* where there is no remedy at law "if the city should attempt to enforce payment of the assessments at a time and under circumstances that would be unjust and inequitable, a court of equity would afford relief." See, also, *People* v. *Green,* 158 Ill. 594; *Fisher* v. *People,* 157 id. 85.

*People ex rel.* v. *City of Chicago,* 152 Ill. 546, was a petition for *mandamus* to compel the city and its superintendent of assessments to credit on subsequent installments an excess arising from the payment of the first installment, as provided in section 65 of article 9, as amended in 1887, (Laws of 1887, p. 104,) above referred to. It was not denied by the city, in its answer, that it had collected the excess, but it claimed the right to reserve a sufficient part of it to meet the loss of interest on installments after they should be paid to the collector and before the time he is required by the statute to settle and pay over, and also the per cent allowed the collector. As vouchers had been issued to those entitled thereto for the work, payable out of the assessments, drawing interest as pro-

vided by the statute, a deficiency would arise, and it was held that the city might lawfully retain a sufficient amount of the excess arising from the payment of the first installment to meet the deficiency. While that case is very different from the one at bar, it tends to show the difficulty, if not impracticability, of a rule that would allow an estimated excess to be deducted from the delinquent assessment on an application for judgment of sale.

Appellant owned all of the property, and the question whether or not equity would afford relief and enjoin a sale upon payment of a sufficient amount of the assessment to pay the cost of the improvement and other legal costs does not arise for decision here, but we are of the opinion the objections were not well taken, and that the county court erred in reducing the assessment. Appellee's assignment of cross-errors is so far sustained, and the judgment is reversed and cause remanded.

*Reversed and remanded.*

CARTWRIGHT and BOGGS, JJ., dissenting.