THE PEOPLE *ex rel.* McCornack, County Treasurer,

*v.*

CAROLINE McWETHY.

*Opinion filed December 21, 1898.*

1. SPECIAL ASSESSMENTS—*on application for sale, court proceeds in a summary manner.* Upon application for judgment of sale for a delinquent special assessment the law requires the court to hear and determine the objections in a summary manner, without pleadings, and to pronounce judgment as the right of the case may be.

2. SAME—*property owner has the right to have city keep account of expenditure on improvement.* One whose property is assessed for a local improvement has a right to have the city keep an account showing what moneys have been expended for the improvement within the power conferred upon it by law for making the same.

3. SAME—*after full cost is ascertained court may refuse judgment for more than enough to meet it.* The court has power to stay the further collection of an assessment by refusing judgment for more than is necessary to meet the final cost of the improvement and the assessment proceedings, where such cost has been finally determined, so that there is no possibility of a larger amount being required.

4. SAME—*court need not give judgment for entire installment if less is required.* Where a portion, only, of an installment of an assessment is required to meet the full cost of the improvement and expenses of the assessment, the court may give judgment for the amount required, notwithstanding the fact that the objections set up that no portion of such installment is needed.

5. SAME—*the city's account of expenses is only prima facie correct.* A property owner may show, as against the city treasurer's account of expenditures for an improvement, that part of the charges were for work not embraced in the ordinance and not payable out of the assessment fund.

6. SAME—*matters fairly included in general terms of the ordinance are within the description.* The description of an improvement in the ordinance therefor being necessarily somewhat general in terms, all details which are fairly implied and necessarily included within the general terms will be regarded as within the description.

7. SAME—*additional catch-basins and extra sewers are not within the description.* The construction of extra sewers and the putting in of additional catch-basins not provided for in the improvement ordinance cannot be held to be within the power of the city and chargeable to the assessment fund because they were beneficial and desirable additions to the improvement.

8. SAME—*city may make minor changes necessary to proper construction of the improvement.* In constructing an improvement to be paid for by special assessment the city may make such minor changes as are found necessary in the execution of the work, and which are within the general scope of the original improvement and necessary to render it all effective.

9. SAME—*city cannot substitute flush tanks for lamp-holes provided in the ordinance.* The cost of flush tanks put in at the dead ends of a sewer by the city in the place of lamp-holes, as provided in the improvement ordinance, is not chargeable to the assessment fund, even though such tanks were regarded as necessary to the perfect working of the sewer system.

10. SAME—*city cannot delegate discretionary power to the engineer.* A delegation of discretionary power from the city council to the city engineer with reference to an improvement is unauthorized and void, whether effected by the terms of the improvement ordinance or by subsequent action of a mass meeting of citizens.

APPEAL from the County Court of Kane county; the Hon. M. O. SOUTHWORTH, Judge, presiding.

FRANK W. JOSLYN, State's Attorney, and WILLIAM J. TYERS, City Attorney, (ALSCHULER & MURPHY, of counsel,) for appellant:

The county judge, in rendering judgment in this cause, found that a portion of the installment was necessary. Having found that it was necessary to collect a portion of the installment his judgment ought to have been that the entire installment be paid. *McWethy* v. *People*, 165 Ill. 222; *Insurance Co.* v. *People*, 172 id. 31.

The ordinance need not set forth all the particulars of the work, nor is it contemplated that in the construction of the improvement all the details of the work must be put in in accordance with the description of the same in the ordinance. *Springfield* v. *Mathus*, 124 Ill. 88; *Levy* v. *Chicago*, 113 id. 650; *Barker* v. *Chicago*, 152 id. 37.

The city is not bound to construct the work in all respects as described in the ordinance. If the city in good faith confines itself to the general scope of the work contemplated by the ordinance, it has then the legal right to modify the work as described by the ordinance, and

to add to and subtract from the same, and charge the work, as modified, to the special assessment fund. *Haley* v. *Alton*, 152 Ill. 113; *Ricketts* v. *Hyde Park*, 85 id. 110; *Gage* v. *Chicago*, 162 id. 313; *Delamater* v. *Chicago*, 158 id. 575; *White* v. *Alton*, 149 id. 626; *Fischer* v. *People*, 157 id. 85; *Rossiter* v. *Lake Forest*, 151 id. 489; *Barber* v. *Chicago*, 152 id. 37.

The objectors, during all the time the work was being constructed, stood by and made no objection that the work was not being performed in accordance with the ordinance, plans and specifications. In regard to a considerable portion of the improvements which they object to pay for, they affirmatively asked that such improvements be made and charged to their district. While the work was being performed they made no objection, by injunction or otherwise, that the work was not being performed in accordance with the ordinance. They at no time presented any communication to the city council protesting that the work was not being performed in accordance with the ordinance, plans and specifications, and having so stood by without objection until the work was completed, they are now estopped from objecting to the payment of the same. *Ricketts* v. *Hyde Park*, 85 Ill. 110; *White* v. *Alton*, 149 id. 626; *Haley* v. *Alton*, 152 id. 113; *New Haven* v. *Railroad Co.* 38 Conn. 422; *Patterson* v. *Baumer*, 43 Iowa, 477; *People* v. *Common Council*, 65 Barb. 1; *Muncey* v. *Joest*, 74 Ind. 409; *Hellenkamp* v. *LaFayette*, 30 id. 192; *Weber* v. *San Francisco*, 1 Cal. 455; *Evansville* v. *Pfisterer*, 34 Ind. 36; *Ritchie* v. *South Topeka*, 38 Kan. 368; *Sleeper* v. *Bullen*, 6 id. 300; *LaFayette* v. *Fowler*, 34 Ind. 140; *Ferguson* v. *Landram*, 5 Bush, 230; *Kellogg* v. *Ely*, 15 Ohio St. 64; *Wiggin* v. *Mayor*, 9 Paige's Ch. 16; *Motz* v. *Detroit*, 18 Mich. 495; *Lundbaum* v. *Manistee*, 53 N. W. Rep. 161; 2 Herman on Estoppel, p. 1360, sec. 1221; *State* v. *Jersey City*, 40 N. J. L. 483; *Liebstein* v. *Newark*, 24 N. J. Eq. 200; *Pittsburg* v. *Scott*, 1 Pa. St. 309; *Muscatine* v. *Railway Co.* 44 N. W. Rep. 909; *Storer* v. *Cincinnati*, 4 Ohio Cir. Ct. 279; *Ashton* v. *Rochester*, 30 N. E. Rep. 965; *Terry* v. *Eagle Lock Co.* 47 Conn. 141; *Railroad Co.* v.

*Railroad Co.* 28 Iowa, 437; *Railroad Co.* v. *Stewart,* 39 id. 267; *Dusenbury* v. *Newark,* 25 N. J. Eq. 295; *Hyde Park* v. *Borden,* 94 Ill. 26; *Byram* v. *Detroit,* 50 Mich. 56; *Attorney General* v. *Detroit,* 26 id. 263; *Corry* v. *Gaynor,* 22 Ohio St. 584; *Pease* v. *Whitney,* 8 Mass. 93; *Prettyman* v. *Tazewell County,* 19 Ill. 406; *State* v. *VanHorn,* 7 Ohio St. 327; *Jackson* v. *Detroit,* 10 Mich. 248.

N. J. ALDRICH, and THEODORE WORCESTER, for appellee:

The ordinance must specifically describe the improvement. *Gage* v. *Chicago,* 143 Ill. 157.

As the ordinance affords the only authority for what is proposed to be done by the municipality, there necessarily can be no authoritative way of making that known except through the ordinance, as required by the statute. *Kankakee* v. *Potter,* 119 Ill. 324; *Levy* v. *Chicago,* 113 id. 650; *Sterling* v. *Galt,* 117 id. 11; *Hyde Park* v. *Spencer,* 118 id. 446; *Ogden* v. *Lake View,* 121 id. 422; *Alton* v. *Middleton's Heirs,* 158 id. 442; *Rich* v. *Chicago,* 152 id. 18; *Title Guarantee Co.* v. *Chicago,* 162 id. 505; *Otis* v. *Chicago,* 161 id. 199.

In a proceeding for the collection of taxes, where the owner may be deprived of his property, the requirements of the statute must be strictly followed. *McChesney* v. *People,* 148 Ill. 221.

Upon ascertainment of the cost of the improvement it was the duty of the city officials to credit the fourth installment with the surplus, if any, of the assessment over the cost. Starr & Curt. Stat. (2d ed.) chap. 24, secs. 63-65.

The city council had no power to delegate a general authority to the city engineer to make additions to the sewer system provided for by ordinance, and charge the cost of such improvements to the sewer fund. 2 Dillon on Mun. Corp. secs. 20, 618; *Foss* v. *Chicago,* 56 Ill. 354.

Power to make changes in an improvement provided for by ordinance cannot be delegated by ordinance as to an officer or officers of the department of public works.

177—22

*Rich* v. *Chicago*, 152 Ill. 18; *Wright* v. *Chicago*, 60 id. 312; *Cass* v. *People*, 166 id. 126; *People* v. *Hurford*, 167 id. 226.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This case was here on a former appeal, when the judgment of the county court of Kane county was reversed and the cause was remanded to that court for a trial of the question whether enough had been collected on the special assessment to pay for the improvement for which it was levied. (*People* v. *McWethy*, 165 Ill. 222.) There has been another trial, at which the court found that almost the entire cost of the improvement had been paid by moneys collected from the first three installments of the assessment and that a comparatively small amount of the fourth installment was necessary to complete the payment, and thereupon gave judgment for one-fifth of the fourth installment to meet the remaining unpaid expense.

It is first claimed that, even if the conclusion of the court was right as to the merits, it was error to order only a fraction of the assessment collected, but that if any amount was necessary, however trifling as compared with the whole installment, there should be judgment for the entire amount. Upon an application for judgment and an order of sale of lands the law requires the court, where objections are filed, to hear and determine the matter in a summary manner, without pleadings, and to pronounce judgment as the right of the case may be. The relation out of which the right arises in such a case as this is, that the property holders contributed, under the assessment, a fund which must be limited to the actual cost of the improvement, and, after such cost has been paid, if any surplus shall remain it must be returned to them. It is necessary to the making of local improvements that the assessment should be collected so as to make payments to the contractors as the work goes on, and, consequently, that the assessment should be made and confirmed before

the work is actually done and the cost definitely ascertained. The assessment must therefore be made upon an estimate of what the cost will be, and in the nature of things this estimate cannot be entirely accurate, but will differ from the actual cost. In order to prevent error as far as possible, the law requires that the ordinance shall specify the nature, character, locality and description of the improvement, and even with that safeguard an estimate is likely to be incorrect, as it proved in this case. This assessment was divided into five installments, and it became so manifest that the fifth installment was not required that the city abated it of its own motion. The fact that the estimate, and the assessment based upon it, are too large will not defeat the assessment; nor is that fact available as an objection to its collection so long as the actual cost remains uncertain or problematical, even in the least degree. A property owner has no right to call upon the city for an accounting upon every application for judgment for a delinquent installment, even if the uncertainty is very slight or relates only to a very small amount. Although a contract has been let for a fixed price, if the work is not completed there may be accidents or contingencies which will increase the cost, and the city cannot be required to account upon a basis of the probable price of labor and materials, or other problematical or uncertain conditions. (*Connecticut Mutual Life Ins. Co.* v. *People*, 172 Ill. 31.) The property owner, however, has a right that the city shall keep an account showing what moneys have been expended for the improvement, within the power conferred upon it by law for the making of the improvement for which he has been assessed. The city is the instrumentality authorized by the law to collect and receive the money from the property owners and to disburse it for the purpose specified in the ordinance, and for that only. It occupies such relation toward those who contribute to the improvement that it is bound to keep an account which will intelligi-

bly show the actual cost of the improvement. When the cost has been finally and conclusively determined, so that there is no possibility of a larger amount being required, there can be no reason in natural justice, and we do not discover any in the law, which should prevent the court from staying the further collection by refusing a judgment for any more than is necessary. The payment of assessments is frequently burdensome, and sometimes results in the loss of the property assessed. An enforced collection of more than may be necessary arises out of the nature of things and the necessity of raising money by an estimate made in advance, but the taking of money that it is definitely known is not required, the payment of which may seriously embarrass the property owner, only to be returned to him in the future, would seem to be a causeless wrong and injustice. Not only would the property owner be deprived of his money without cause, but it is not always easy to obtain a return of it, and it is the common observation and experience in matters of this kind, that, like the fabled cave, the tracks are all going in and none coming out. When the work is finally completed and paid for, the party assessed is entitled to an accounting for the purpose of a rebate or return of any excess of payment, and we see no good reason why he cannot demand a settlement of that question when judgment against his land is asked for. The written objections were that enough money had already been collected without a portion of the fourth installment; but we think that in a proceeding of this kind, if the court renders a judgment according to the right and justice of the case, it cannot be said to be erroneous because not based upon the exact terms of the written objections as filed.

In this case the ordinance providing for the improvement was passed by the city council of the city of Aurora July 7, 1890. The contract for the making of the improvement was let to the Rockford Construction Company, and its contract was completed and the work accepted in De-

cember, 1892. The books of the city show, under date
of August 19, 1895, the payment of the last outstand-
ing voucher issued under that contract, amounting to
$3114.50. The entire work for which the ordinance pro-
vided had been completed for several years and the last
payment made long before the hearing in this case. It
was therefore a proper case in which to call upon the
city for a statement of the amount expended for the im-
provement. Three methods were employed at the hear-
ing to show the amount of moneys received by the city
from the first three installments: First, the warrant;
next, a lot of small auxiliary cash books; and third, a
large cash book containing an account of all moneys col-
lected. The amounts as shown by these methods differed,
but it was finally shown that the large cash book was
correct and that the total amount collected on those in-
stallments was $59,726.83. The city exhibited an order
book showing warrants issued against this assessment,
amounting to $68,535.95, and had allowed $136.59 for in-
terest on the rebate of the fifth installment, making, as
it claimed, the total cost $68,672.54. It is insisted that
this statement cannot be questioned, and in some respects
that is true. Counsel are correct in their claim that the
city is not bound to prove that the prices paid were rea-
sonable, or to prove the account, except to show that it
paid the amount in the making of the improvement. It
has power, by law, to let the contract, to direct and in-
spect the work, to audit the accounts and to accept and
pay for the work when complete. These matters are
within its exclusive jurisdiction, and in the absence of
fraud the property owner cannot, in any form of pro-
ceeding, call upon the city to justify its action. The
city, and not the individual property owner, is the judge
whether the contract is complied with, and unless there
is a fraudulent abuse of the power the property owner
is concluded, and in case of fraud a bill in equity is the
proper remedy. *Ricketts* v. *Village of Hyde Park*, 85 Ill. 110;

*Haley* v. *City of Alton,* 152 id. 113; *Fisher* v. *People,* 157 id. 85; *People* v. *Green,* 158 id. 594.

The appellee, however, had a right to show, as against the *prima facie* case made by the treasurer, that a part of these charges were for work not embraced within the ordinance and not payable out of the assessment fund, but expended elsewhere. As to some of the items we think she was successful in making such proof. The total amount paid to the Rockford Construction Company for the completion of the improvement, as accepted by the city and including all extra work done and interest, was $57,667.90. Included in the amounts so paid were the following sums: A sewer 249 feet in length in Cross street, costing $112; a sewer 786 feet long in Middle avenue; amounting to $276.74; and twenty-three catch-basins, costing $828, none of which were included in the ordinance. It is contended that these additions to the improvement were within the power of the city and properly chargeable to the assessment fund because they were desirable and beneficial as additions thereto. It is true that the description of the improvement in an ordinance must be in somewhat general terms, and that it cannot descend to details. Those things which are fairly implied and necessarily included within the general terms used will be regarded as within the description. (*Delamater* v. *City of Chicago,* 158 Ill. 575; *Gage* v. *City of Chicago,* 162 id. 313.) This applies to small matters which may be regarded as a necessary part of the improvement, because without them it could not be made. Some things of that character we think were included, as will be hereafter seen; but in the case of the catch-basins the ordinance particularly specified the number to be included in the improvement as 152, and gave in general terms the location of them. Instead of following the ordinance the city put in 175. If sewers were to be put in Middle avenue or Cross street they should have been provided for in the ordinance and estimated by the commissioners. Neither of these

changes comes within the rule as to small matters necessarily implied from the general terms employed. The ordinance is the chart of the city, and it must keep within its requirements and not make another or different improvement, even if it could be shown to be more beneficial than the one provided for. These items must be deducted from the amount paid the construction company, leaving the correct amount $56,451.16.

There is a further claim that this district should be credited with $900, on the ground that on January 6, 1896, the city council passed an ordinance for the construction of sewers in another district to be paid for by special assessment, including $900 to be paid to this sewer district for the use of its main sewer in Garfield avenue and Holbrook street from Chestnut street to Fox river. The record does not show that such assessment was ever spread or confirmed or collected or that the sewers therein provided for were ever built, but shows that the $900 was never received or collected by the city. The elements are lacking to even show that it could be collected, and that item cannot be allowed. If the amount can be collected there is a remedy to require the city to make the collection for the benefit of the district.

Some minor changes were found necessary in the execution of the work, such as the substitution of an iron pipe for brick work under a railroad track, where the brick work would be shortly destroyed, and a slight enlargement of the main sewer near Fox river, where it was found insufficient to discharge the sewage. These changes were within the general scope of the original plan and were necessary to render it at all effective. They do not belong to the same class as the construction of things not provided for in the ordinance, and there were other minor changes which reduced the cost of the work more than enough to offset the expense. So, also, after the work was done the mouth of the sewer, which discharged at Fox river, had to be protected by a stone

abutment to save the sewer. An iron door opening outward, to permit the escape of sewage but closing in case of a flood in the river, which would back water into the sewer and force sewer gas back, was found essential. These things were necessary parts of the sewer as described in the ordinance and fairly included within its general terms. No deduction can be made on account of them. ·

The sewer as provided for by the ordinance ended at the bank of Fox river, and after it was finished the city, apparently for general purposes of sanitation, put in an iron pipe to the middle of Fox river. So, also, the city, in the subsequent years of 1893, 1894 and 1895, put in flush tanks at the dead ends of the sewer, and other catch-basins, costing $4139.85. These expenses are not chargeable to the assessment fund. It is contended that the flush tanks are within the terms of the ordinance, for the reason that it referred to plans and specifications on file in the office of the city clerk. It was shown, however, that there was no plan or specification for this improvement in the office of the city clerk including or contemplating flush tanks at the dead ends of the sewers. There had been a plan for a general system of sewers for the whole city, differing from this, which did have such a provision, but it was abandoned and was not the plan referred to in the ordinance. The flush tanks were outside of the ordinance, both in fact and as it was understood. They were not included within the contract, and the understanding was that there were to be lamp-holes at those places. Indeed, it was offered to prove, and counsel now assert, that these subsequent improvements were made at the instance of mass meetings of citizens. They were made under resolutions of the city council passed May 15, 1893, and May 21, 1894, which vested a discretion in the sewer committee and city engineer. This was a delegation of authority and discretion which would have rendered the original ordinance void if con-

tained in it, and, of course, it does not strengthen the position that the resolutions were passed subsequently to the ordinance. The attempt at vesting discretionary power in the committee and city engineer was void.

It is also insisted that the flush tanks and catch-basins were properly constructed and charged to the assessment fund because they were necessary and beneficial for the perfect working of the system. That is no justification. If the city contemplated such an improvement, and expected to compel property owners to pay for it by a special assessment, it should have been described in the ordinance. The fact that flush tanks may be desirable does not justify a city in building them and expending the money of property owners therefor in place of lamp-holes which are provided for in the ordinance. In fact, the evidence shows that in order to make the system complete and to make it work satisfactorily a different kind should have been put in. These flush tanks have to be operated by going around and turning water into them, and the evidence was that automatic flush tanks were necessary. If that sort of thing can be done under the original assessment it would be equally proper to put in automatic ones now, and the lingering existence of an assessment would go on indefinitely.

In addition to the amount paid to the Rockford Construction Company properly chargeable to the assessment, the account shows expenses of engineering and inspection, $3378.16; clerk hire, $573.98, and expense of advertising and court costs, $130.90. The engineering and inspection account evidently includes, to some extent, at least, engineering and inspection in the building of the flush tanks and catch-basins, and goes beyond the construction of the improvement. This will appear from the dates. But no objection is made on that account, and it would not be easy to separate legitimate charges from those which are unlawful. Allowing these items, they make a total of $60,534.20, about which there is no

doubt, and this shows a small balance, at least, is necessary to be collected from the fourth installment. This is all that can be ascertained with certainty from the statement and evidence and an examination which has occupied much time. While there has doubtless been an honest effort and intent to conform to the law, it is impossible to tell exactly what the proper state of this account is, and it is certain that it will not get any better with time. The evidence as to the interest on the rebated installment does not show clearly whether it ought to be allowed or not. A great many of the items of the account do not show what they are for, and perhaps half of the 225 vouchers, or thereabouts, have been lost,—not by the fault of any one, but with the effect that there can never be an absolutely accurate accounting, either for the purpose of a return of money to the parties interested or for this purpose. The amount ordered to be collected by the county court is certainly as much as the entire legitimate charges against the district with all the cost and expense of collection, and in the condition of the evidence we are inclined to affirm the judgment. It is the nearest approach to justice that the evidence will admit of.

The judgment will accordingly be affirmed.

*Judgment affirmed.*