A. W. LOTSPEICH *v.* MAYOR AND ALDERMEN OF TOWN OF MORRISTOWN.*

(*Knoxville.*   September Term, 1918.)

1. **MUNICIPAL CORPORATIONS.**   Powers.   Delegation.

The powers possessed by municipal officers must be viewed as public trusts, and legislative powers of the board of mayor and aldermen cannot be delegated to the mayor, although mere ministerial powers may be so delegated. (*Post, pp.* 119-125.)

Cases cited and approved:   Dillard v. Webb, 55 Ala., 468;   Bibel v. People, 67 Ill., 172;   Bills v. Goshen, 117 Ind., 221;   Koeppen v. Sedalia, 89 Mo. App., 648;   Hengst v. Cincinnati, 9 Ohio Dec., 731;   Jewell Belting Co. v. Bertha, 91 Minn., 9;   People v. Mc-Wethy, 177 Ill., 334;   McCrowell, v. Bristol, 89 Va., 652;   State v. Glavin, 67 Conn., 29;   Blair v. Waco, 75 Fed., 800;   Johnston v. Macon, 62 Ga., 645;   Curran Bill Posting & D. Co. v. Denver, 47 Colo., 221;   People ex rel. Healy v. Clean Street Co., 225 Ill., 470;   Whyte v. Mayor & Aldermen of Nashville, 32 Tenn., 364.

2. **MUNICIPAL CORPORATIONS.**   "Ministerial Act."   "Legislative Act."

A purely ministerial function of a municipal officer is one as to which nothing is left to discretion, while legislative acts involve the exercise of discretion and judgment. (*Post, pp.* 125, 126.)

3. **MUNICIPAL CORPORATIONS.** Delegation of powers. Legislative powers.

Where Acts 1903, chapter 103, under which a city was incorporated, vested in the board of mayor and aldermen all power to contract, an arbitration agreement made by the mayor with one whose property the city desired to condemn for a new city hall building was

*On the question of delegation of municipal power as to city property;   contracts, etc., see note in 20 L. R. A., 727.

141 Tenn.—8

void, for, though the board of mayor and aldermen by resolution directed the mayor to enter into a written agreement of arbitration, and select arbitrators, *held*, that such acts involved discretion, and the power to perform the same could not be delegated. (*Post*, *pp.* 125, 126.)

Acts cited and construed: Acts 1903, ch. 103.

Case cited and approved: City of Biddeford v. Yates, 104 Me., 506.

### FROM HAMBLEN

Appeal from the Chancery Court of Hamblen County. —Hon. Hugh G. Kyle, Chancellor.

J. A. Carriger, for appellant.

Rufus M. Hickey, for appellees.

Mr. Justice Hall delivered the opinion of the Court.

The bill in this cause was filed by the complainant, A. W. Lotspeich, against the mayor and aldermen of the town of Morristown, seeking to enforce an award of arbitration made pursuant to an alleged arbitration agreement entered into in writing by W. B. Whittaker, mayor of the defendant, on August 3, 1916.

The defendant, mayor and aldermen of the town of Morristown, answered the bill, setting up in its answer the defense, by plea of *non est factum,* that the mayor was without authority to bind the city under said agreement, it appearing that said arbitration agreement executed by him was never reported to the defendant, and the same was never ratified by it.

This defense was sustained by the chancellor, and complainant's bill was dismissed. From this decree complainant has appealed to this court, and has assigned the action of the chancellor in dismissing his bill for error.

It appears from the record that the defendant, mayor and aldermen of the town of Morristown, having determined to build a city hall for the city of Morristown, and being desirous of securing additional ground upon which to erect said structure, by resolution passed on July 1, 1916, authorized and directed its city attorney to file condemnation proceedings against the complainant in the circuit court of Hamblen county, Tenn., to have condemned for said purpose a lot or parcel of land adjoining a lot already owned by the city situated at the corner of First North and Henry streets in the city of Morristown. The lot or parcel of land sought to be condemned by said proceedings in the circuit court lies on the eastern boundary of the lot then owned by the city known as the "city hall" lot, and fronts and is bounded on the south by First North street, commencing at the southeast corner of the city hall lot, and running parallel with First North street twenty feet east; thence northwardly a direct line eighty-seven feet; thence eastwardly a direct line twenty feet; and thence southwardly a direct line eighty-seven feet to the beginning.

This suit was pending in the circuit court of Hamblen county, and had not been disposed of, when, on July 7, 1916, the defendant, in regular session, passed the following resolution:

"On motion of Alderman Jas. E. Burke, and seconded by Alderman S. J. Felknor and by the affirmative vote of the board, the mayor, W. B. Whittaker, was directed to enter into a written agreement of arbitration on behalf of the mayor and aldermen of the town of Morristown, with A. W. Lotspeich, to select a jury of view, etc., to determine the value of a certain lot lying and situate between the present city hall lot on First North street and the new brick building of the said A. W. Lotspeich, to acquire same for city hall purposes, and to take such steps as are necessary to effect a speedy settlement with said Lotspeich for the acquirement of said lot."

Thereafter, on August 3, 1916, the mayor of the defendant, W. B. Whittaker, pursuant to said resolution, entered into the written arbitration agreement with the complainant hereinbefore referred to. This agreement is lengthy, and we will not undertake to set it out *in hæc verba* in this opinion, but only such of its stipulations will be referred to as may be material to the determination of the questions to be hereinafter considered, which, we think, is determinative of the cause.

The resolution of July 7th expressly described the lot or parcel of land which was to be made the subject of the arbitration agreement to be entered into by the mayor with the complainant as a strip of land lying between the present city hall lot on First North street and the new brick building of the complainant, which lot, the proof shows, has a frontage of twenty-five feet on First North street, while the mayor assumed to agree with complainant to arbitrate with respect to a strip of

land fronting nineteen feet on First North street and running back eighty-five feet, the nineteen feet being only a portion of the twenty-five foot lot.

The mayor, acting under said resolution, selected an arbitrator for and on behalf of the defendant, to wit, John M. Williams. The complainant selected L. W. Brown as the arbitrator on his behalf, and the mayor and complainant mutually agreed on James Robinson as the third arbitrator. The mayor further agreed that, in fixing the value of the property taken and the incidental damages to the portion not taken, the arbitrators should proceed according to the law of eminent domain. He further agreed that there should be no appeal from the award of the arbitrators, and that the award should be final and could be specifically enforced. He further agreed that the defendant, mayor and aldermen of the town of Morristown, should pay the taxes assessed against said property for the year 1916, together with paving assessments outstanding, which the proof shows to be approximately $50. He further agreed that the mayor and aldermen of the town of Morristown should construct a wall out of stone, cement, or other suitable material on the line between the property of the city and the property of the complainant, and that said wall should be built entirely on the property of the defendant. He further agreed that the defendant should dump, without expense to the complainant, all surplus dirt that it might have by reason of any excavation incident to the building of its city hall and preparing alleys, etc., on the remaining property of the complainant, or on such parts thereof as he might designate or

indicate. He also agreed that the complainant and his vendees should have free use of the alley to be opened up by the defendant on the north or east of said city hall to be erected by it.

On August 11, 1916, the arbitrators so selected, after being duly sworn, proceeded to act under said arbitration agreement, and fixed the value of the lot mentioned and described in said arbitration agreement at the sum of $1,710, which sum was awarded to the complainant for said lot. They awarded to the complainant, as incidental damages, the sum of $1,400, as follows: $450 to the six feet as described in the agreement to arbitrate lying between the new brick building of said Lotspeich and the said nineteen feet sought to be appropriated, and $950 resulting to said Lotspeich on account of not being able to use to advantage the western wall of his said brick building. The total amount awarded to the complainant as the value of the land taken and incidental damages to the remainder was the sum of $3,110.

The arbitration agreement and the award of the arbitrators based thereon were never reported to the defendant, and were never ratified by it.

The complainant, after said arbitration was had and the arbitrators had made report of their findings in writing tendered to the defendant a deed for said property duly executed in accordance with said award, which it refused to acctept. Whereupon the present bill was filed, and the deed tendered with the bill, and upon final hearing the bill was dismissed by the chancellor, as before stated.

The chancellor held that the defendant was not bound by the arbitration agreement entered into with the complainant by its mayor on August 3, 1916, and was not bound by the award of the arbitrators selected under said agreement, because the resolution previously passed by the defendant on July 7th authorizing its mayor to enter into said arbitration agreement was an unlawful delegation of its powers to the mayor, and that the mayor's action in the premises was not binding upon the defendant. It is insisted by the complainant that in this holding the chancellor committed error, for the reason that the powers delegated to the mayor by said resolution were purely administrative, and not legislative.

The following rule is announced by Mr. McQuillin in his valuable work on Municipal Corporations (volume 1, section 382, et seq.):

"The legal conception early obtained that the powers possessed by public and municipal officers 'must be viewed as public trusts, not conferred upon individual members for their own emolument, but for the benefit of the community over which they preside.' Therefore the principle is fundamental and of universal application that public powers conferred upon a municipal corporation and its officers and agents cannot be surrendered or delegated to others. . . . So the power to contract for the erection of public buildings cannot be surrendered to private individuals. . . . In every case where the law imposes a personal duty upon an officer in relation to a matter of public interest, he cannot delegate it to others, as by submitting it to arbitra-

tion. . . . Such powers belong emphatically to that class of objects which demand the application of the maxim, 'Salus populi supreme est lex;' and they are to be attained and provided for such appropriate means as the discretion of those who officially represent and act for the municipal corporation may devise from time to time. This discretion can no more be bargained away than the power itself.''

Again, at section 383, Mr. McQuillin says:

''So, where the mayor and aldermen must select the sites for public markets, the architect, and plans, and commissioners are required to make purchases and contracts, a resolution appointing the commissions to purchase a site and build a public market is void. So, where certain duties are conferred upon the council and chief engineer of the fire department, they cannot be delegated by ordinance or otherwise, to a fire board. So the determination of the kind of material with which streets shall be paved, or sewers constructed, and the manner and time in which such work shall be done, conferred upon particular officers, boards, or departments, cannot be delegated. So, where the law confers upon the council, in conjunction with the board of education, power to purchase a site for school purposes, such authority cannot be delegated to the board of public works. So, where the organic law vests the power of appointment of an attorney in the council, it cannot be transferred to the mayor by ordinance or otherwise. . . . Nor can the city relieve its officers from discharging their regular duties, as by contracting by ordinance or

otherwise with another to perform part or all of such duties.''

Mr. McQuillin, in distinguishing between discretionary and ministerial powers, at section 384, uses the following language:

''There is a clear distinction to be observed between legislative and ministerial powers. The former cannot be delegated; the latter may. Legislative power implies judgment and discretion on the part of those who confer it.

''Duties required to be performed by ordinance are legislative and cannot be delegated. So the fixing of the time when and within which public work is to be done in a legislative function, and cannot be delegated to the city engineer.''

Again, at section 385, Mr. McQuillin says:

''So, where the charter imposes the duty upon the council to determine the manner in which an improvement, as a street, shall be made, such duty cannot be delegated by ordinance to a city officer of the street committee of the council. So the power conferred by charter upon the council 'to erect lamps, and to provide for lighting the city,' and 'to create, alter, and extend lamp districts,' cannot be delegated to a committee of the council, so that the determination of the committee will be final, either as to erecting new lamps or discontinuing those already established.''

Again, speaking of the distinction between discretionary and ministerial powers, this author, at section 387, uses the following language:

''The rule forbidding the delegation of power, stated and illustrated in prior sections, does not apply to the performance of purely ministerial duties. Such duties may be delegated.

''The law has always recognized and emphasized the distinction between instances in which a discretion must be exercised by the officer or department or governing body in which the discretion is vested and the performance of merely ministerial duties by subordinates and agents. Therefore the appointment of agents to carry out the authority of the council is entirely competent and does not violate the rule, '*Delegatus non protest delegare.*' Thus the council may create committees or other bodies to investigate given matters, to procure information, to make reports and recommendations, and not exceed its power in the matter under consideration, but the council alone must finally determine the subject committed to its discretion and judgment. . . . So the council may authorize the mayor to make a contract which the council alone is authorized to make, and afterwards ratify such contract and take action, as in issuing bonds, in pursuance of it. In such cases the mayor merely acts as the instrument or amanuensis of the council. It is through him that the contract is made. The council by ratification finally determines and fulfills the duty imposed by law.''

The rule seems to be well settled that, so far as the powers of a municipal corporation are legislative, they rest in the discretion and judgment of the municipal body intrusted with them, and the general rule is that that body cannot delegate or refer the exercise of

such powers to the judgment of a committee. *Dillard v. Webb,* 55 Ala., 468; *Bibel* v. *People,* 67 Ill., 172; *Bills* v. *Goshen,* 117 Ind., 221, 20 N. E., 115, 3 L. R. A., 261; *Koeppen* v. *Sedalia,* 89 Mo. App., 648; *Hengst* v. *Cincinnati,* 9 Ohio Dec., 731.

It has been said that the reason for this rule is found in the fact that members of the council are chosen by the people to represent the municipality, charged with a public trust and the faithful performance of their duties; and the public is entitled to the judgment and discretion, in all matters where such elements enter into transactions on behalf of the municipality, of each member of the body upon which authority to act is conferred. *Jewell Belting Co.* v. *Bertha,* 91 Minn., 9, 97 N. W., 424.

Within the rule that the governing body of a municipality may not delegate its legislative functions to a committee, it has been held that the power to order the construction of sewers cannot be delegated to a sewer committeee. Nor can the power to make certain improvements in the sewerage system be delegated to a committee and the city engineer. *People* v. *McWethy,* 177 Ill. 334, 52 N. E. 479.

It has been held that the council may not delegate the duty of prescribing the width of a proposed sidewalk to the street committee and city engineer. *McCrowell* v. *Bristol,* 89 Va., 652, 16 S. E., 867, 20 L. R, A,, 653.

The power to license a particular occupation within the corporate limits, it has been held, cannot be delegated

by the municipality to the mayor. *State* v. *Glavin,* 67 Conn., 29, 34 Atl., 708.

It has been held that it is beyond the power of the city council to delegate to the mayor or to any agent the power to sell certain municipal bonds at a price to be fixed according to his discretion. *Blair* v. *Waco,* 75 Fed., 800, 21 C. C. A., 517.

It has also been held that, where the mayor and council have the power to tax, this power cannot be delegated to the mayor alone. *Johnston* v. *Macon,* 62 Ga., 645.

Nor can a municipal corporation commit to one of its departments the discretion to revoke or decline to renew a billboard license. *Curran Bill Posting & D. Co.* v. *Denver,* 47 Colo., 221, 107 Pac., 261, 27 L. R. A. (N. S.), 544.

Neither can it delegate to a committee of officials the power to take steps to prevent the casting of litter into the streets, and to provide for the erection and cleaning of receptacles for such refuse, where it is given the power to provide for the maintenance of clean streets. *People ex rel. Healey* v. *Clean Street Co.,* 225 Ill., 470, 80 N. E., 298, 9 L. R. A. (N. S.), 455, 116 Am. St. Rep., 156.

In *Whyte* v. *Mayor and Aldermen of Nashville,* 2 Swan (Tenn.), 364, 365, it was held that the powers conferred upon a municipal corporation must be exercised in conformity with the law of its creation; and hence the corporation of Nashville had no power to delegate to any one or more members of the board of aldermen authority to give notice, to such citizens as they might

select, to construct footpavements in front of their lots, and, in the event of failure to make such pavements within the time fixed by a by-law of the corporation, to have them made at the expense of the owner of the lot; that this was a power conferred upon the corporation which could not be delegated.

The defendant was incorporated under chapter 103 of the Acts of 1903. By this act all power to contract is vested in the board of mayor and aldermen. There is no provision in the charter authorizing the mayor to execute contracts or to bind the municipality. He is vested with no discretionary powers. The only provision in the act conferring any authority on the mayor is found in section 3 thereof. This section provides that the mayor shall preside at all meetings of the board, to see that all ordinances of the town are duly enforced, and he is vested with the power to call special sessions of the board when he may deem it expedient.

The resolution of July 7th conferred full power on the mayor to enter into the arbitration agreement on behalf of the defendant, and "to take such steps as were necessary to effect a speedy settlement with the complainant for the acquirement of said lot." He, of necessity, had to exercise judgment and discretion in selecting an arbitrator for the city; in agreeing on a third arbitrator; in reducing the frontage of the lot from twenty-five feet to ninteen feet; in contracting for a right of way for the complainant over the city's property; in agreeing to build a wall on the city's property; in agreeing to release the complainant from the payment of taxes and paving assessments; and in agree-

ing that the award of the arbitrators should be final, and the city should not have the right to appeal therefrom.

A purely ministerial function of a municipality is one as to which nothing is left to discretion; while legislative acts involve the exercise of discretion and judgment. *City of Biddeford* v. *Yates*, 104 Me., 506, 72 Atl., 335, 15 Ann. Cas., 1091.

We are clearly of the opinion that the powers attempted to be delegated to the mayor by the resolution of July 7th were legislative rather than ministerial. It attempted to confer upon the mayor the power to contract on behalf of the city, by which contract the city was to be bound, when that power is vested alone in its mayor and aldermen under its charter. It vested in the mayor a wide discretion in making said arbitration agreement and in taking such steps as were necessary to acquire the property from complainant. This discretion the mayor exercised in the particulars hereinbefore enumerated.

We think the powers delegated by said resolution were unlawful, and the chancellor was correct in so holding. His decree is therefore affirmed, with costs.